Argued and submitted January 28, reversed and remanded April 6, 1981

# MEYER,
## *Petitioner,*
### *v.*
# EMPLOYMENT DIVISION et al,
## *Respondents.*

### (No. 80-AB-498, CA 18121)

626 P2d 400

Margaret J. Nightingale, Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for petitioner.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

No appearance made by respondent Boise Cascade.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

Petitioner seeks review of an order of the Employment Appeals Board which found that he was disqualified from receiving unemployment benefits because he voluntarily left work without good cause. He contends that the agency failed to appoint an interpreter as required by ORS 183.418, and the failure impaired the fairness of the proceedings and the correctness of the agency action. We reverse and remand.

Petitioner worked for respondent Boise Cascade from October, 1973 to December 27, 1979, when he quit his job. When unemployment benefits were denied on the ground that he had left his job without good cause, petitioner requested a hearing. The hearing was scheduled for the morning of March 13, 1980, but was postponed to the afternoon because of petitioner's hearing and speech difficulties. When the hearing began in the afternoon the referee stated:

> "* * * This morning we opened the hearing; however, we — we adjourned it because Mr. Meyer has a hearing problem, and he didn't have the battery to his hearing aid, and also I was having great difficulty understanding him. I was afraid that what he said wouldn't record so anybody could transcribe it if that was required. Now we will try this afternoon to take Mr. Meyer's testimony direct. If I think there might be a problem as far as being able to understand from the recording, I will ask him to tell his wife, and she can tell me what he said."

Petitioner's wife was sworn as an interpreter and the referee repeatedly asked petitioner to speak through her. However, petitioner's wife also had difficulty understanding him and asked to be excused. The referee excused her and then worked laboriously with petitioner to try to understand what he was saying. Petitioner's statements are transcribed as "unintelligible" nearly 100 times throughout the 68 page transcript, and as "phonetic" over 70 times.

After the hearing the referee found that petitioner had left his job voluntarily without good cause. That determination was affirmed by the Employment Appeals Board (EAB). Petitioner sought reconsideration on the ground

that he was a handicapped person as defined by ORS 183.418 and that an interpreter had not been appointed as required by the statute. The EAB found that petitioner was not a handicapped person under the statute and that

"[b]ased on the record, the claimant was given the opportunity for a fair hearing and was given the opportunity to provide a qualified interpreter. The fact that his wife was chosen to act instead does not change the outcome of our decision. It was well within the claimant's power to provide someone other than his wife to act as his interpreter."

ORS 183.418 provides:

"(1)   When a handicapped person is a party to a contested case, he is entitled to a qualified interpreter to interpret the proceedings to the handicapped person and to interpret the testimony of the handicapped person to the agency.

"(2)(a) Except as provided in paragraph (b) of this subsection, the agency shall appoint the qualified interpreter for the handicapped person; and the agency shall fix and pay the fees and expenses of the qualified interpreter if:

"(A)   The handicapped person makes a verified statement and provides other information in writing under oath showing his inability to obtain a qualifed interpreter, and provides any other information required by the agency concerning his inability to obtain such an interpreter; and

"(B)   It appears to the agency that the handicapped person is without means and is unable to obtain a qualified interpreter.

"(b)   If the handicapped person knowingly and voluntarily files with the agency a written statement that he does not desire a qualified interpreter to be appointed for him, the agency shall not appoint such an interpreter for the handicapped person.

"(3)   As used in this section:

"(a)   'Handicapped person' means a person who cannot readily understand or communicate the English language, or cannot understand the proceedings or a charge made against him, or is incapable of presenting or assisting in the presentation of his defense, because he is deaf, or because he has a physical hearing impairment or physical speaking impairment.

"(b)   'Qualified interpreter' means a person who is readily able to communicate with the handicapped person,

translate the proceedings for him, and accurately repeat and translate the statements of the handicapped person to the agency."

■ The first question presented in this case is whether petitioner is a handicapped person as defined by that provision. The referee clearly treated petitioner as a person who did not "readily * * * communicate the English language." He obviously had difficultly understanding petitioner, as did the reporter who transcribed the proceedings. Although the EAB found that petitioner was not a handicapped person under the statute, there is no support for that conclusion in the record. The finding that petitioner is not a handicapped person is not supported by substantial evidence.

■■ The EAB went on to find that, even if petitioner were handicapped he could have provided an interpreter for himself. This misconstrues the statute by placing the burden on the claimant to provide an interpreter. The statute provides in mandatory terms that an interpreter *shall be appointed by the agency* when a handicapped person is a party to a contested case. Even if claimant's use of his wife as interpreter in the beginning of the hearing could be said to have been appointment by the referee, agreed to by the petitioner, her request to be excused and the referee's agreement to that request early in the hearing left petitioner without any interpreter.

ORS 183.482(7) provides that:

"The court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure."

In this case it appears that the fairness of the proceeding was certainly impaired and the correctness of the action may have been.

■ Petitioner's general explanation for why he left his job has to do with harassment by fellow employes, stemming at least in part from his communication problems. That type of harassment is at least potentially a valid

reason for leaving a job. *See* OAR 471-30-038(4);[1] *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979).

■      If petitioner's general explanation for leaving his job, which is discernible from the record, at least *might* have supported a finding of good cause for leaving, the particulars of that story are required for a fair determination by the hearings officer initially, and by the EAB and this court on review. Petitioner was impeded from giving the particulars of that story because of his inability to communicate. Petitioner was not prevented by his communication problems from giving *any* account of his reasons for leaving his job, but he was prevented from giving a complete account and that may have resulted in a different outcome than would otherwise have occurred. In addition, there are places where petitioner's story seems to be contrary to that of the employer's witnesses, as in petitioner's attempts to report the harassment to his superiors and their responses to those reports. The referee's determination of petitioner's credibility could have been affected by his inability to understand petitioner's entire account.

We conclude that both the fairness of the proceedings and the correctness of the action may have been impaired by the failure of the agency to appoint a qualified interpreter for petitioner. A new hearing must be held with an interpreter appointed.

Reversed and remanded.

---

[1] OAR 471-30-038(4) provides:

"Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."